IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN A. MCCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-03272-S-ODS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION AFFIRMING COMMISSIONER'S
FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability and supplemental security income benefits . The Commissioner's decision is affirmed.

BACKGROUND

Plaintiff was born on April 13, 1958 and has formal education through 10th grade. She has prior work as a department manager for Wal-Mart and a certified medical technician for a nursing home. She alleges she became disabled after a stroke on September 4, 2002. She further alleges disability due to physical and mental impairments including rheumatoid arthritis, fibromyalgia, headaches, Hepatitis C, and depression. Plaintiff filed an application for benefits on October 16, 2002.

In 1996, Plaintiff was voluntarily admitted to Lakeland Regional Hospital from April 17 to April 26 after complaining of increasing depression, disturbance of sleep and emotional activity. R. at 139. Upon admission she was diagnosed with major depression and alcohol abuse. Dr. Dennis Morrison performed her physical examination and diagnosed Plaintiff as suffering from an alcoholic toxicity to the liver. Dr. James Bright performed her mental examination and found that she was depressed, anxious, sad, tearful and very humble. She was stable upon discharge and advised to follow up with Dr. Bright, attend local Alcoholic's Anonymous meetings and follow up with her primary care doctor. R. at 141. On February 16, 2001, Plaintiff was seen at the

Marshfield Family Clinic and complained of right hip pain and numbness at the tips of her fingers. Plaintiff was examined, but no neurological deficit was found. She was given a prescription of Lorcet and told to come back if necessary. R. at 149.

On September 4, 2002, Plaintiff presented to Cox Medical Center in Springfield, Missouri, complaining she "popped" her hip five days prior. She then began having a sharp right side pain, burning pain in her right shoulder radiating down her right arm, and numbness and loss of sensation in her right arm. R. at 158. She was still able to walk, but reported she was unable to move her arm. She denied having a headache. Dr. Jock Porter examined her and noted that Plaintiff had an "odd affect" and did not seem particularly disturbed about the loss of use of her right arm. R. at 159. Plaintiff reported some mild pain with range of motion of her right hip, but range of motion was easily performed. The muscle strength in her right arm was 1/5, 5/5 in her left arm, 5/5 in her left leg and 4/5 in her right leg. Her deep tendon reflexes were 2+ and symmetrical throughout. R. at 159. An x-ray examination of her right hip was negative, as was a CT of her head. Dr. Porter opined that it was very unlikely Plaintiff was having a cerebrovascular accident (CVA). R. at 160. Further, Dr. Porter stated that Plaintiff's right arm pain was most consistent with cervical radiculopathy. R. at 160. Plaintiff was released with Lorcet Plus for her pain and her arm was put in a sling. An MRI performed the following day was normal. R. at 160.

On September 13, 2002, Plaintiff was examined by Dr. George F. Wong. R. at 172. Plaintiff complained of left leg weakness and dizziness that caused her to fall the day before. She also complained of migraine headaches several times a month. Plaintiff admitted smoking a pack of cigarettes a day, denied drug use except marijuana and denied alcohol use. R. at 172. Dr. Wong assessed Plaintiff had a transient ischemic attack (TIA) and prescribed Prenatal Tabs, Lorcet Plus, Diazepam, and Zoloft. R. at 174.

Plaintiff underwent a consultative psychological evaluation with Joan Bender, Ph.D., on December 17, 2002. R. at 180. Plaintiff reported a medical history of stroke in September and a diagnosis of rheumatoid arthritis. She further reported an MRI showed a birth defect of her cervical spine that caused migraines. She complained of daily 20

minute episodes of jerking movements of her body, but no loss of consciousness. Plaintiff also reported she had migraines as least once a week that last several days at a time. R. at 180. She indicated that she took up to three Valium a day and Zoloft daily until she ran out. She had taken Lorcet for about a week for pain but her doctor would not renew the prescription because "he thought [she] was a drug addict." Plaintiff stated she was an alcoholic and used marijuana twice a month. R. at 180. Based upon Plaintiff's information, Dr. Bender opined Plaintiff could understand moderately complex instructions, but only recall simple ones, did not seem capable of concentrating on even simple tasks for a full work day or week, and would most likely not be able to handle more than limited contact with the general public, coworkers and supervisors. R. at 182. She could probably adapt to change in a simple work environment and could probably manage her own funds. R. at 182. Dr. Bender felt Plaintiff was honest about her symptoms and her medical history and recommended medication and therapy. With this information, Dr. Bender assessed recurrent major depression, panic disorder with agoraphobia, posttraumatic stress disorder, cognitive disorder and a global assessment of functioning score of 40. R. at 182.

After receiving Plaintiff's medical records, Dr. Bender wrote an addendum to her report on January 6, 2003. R. at 177. Dr. Bender noted there were some contradictions between Plaintiff's reported medical history and her medical records. Most notably, Plaintiff claimed to have suffered from a stroke, but her medical records did not indicate that to be the case. She reported to her ER physician that she uses alcohol but does not use illegal drugs, however, she told Dr. Bender she was nine years sober and smokes marijuana twice a month. R. at 177. Dr. Bender was no longer confident about any information provided by Plaintiff regarding her substance abuse and descriptions of her medical symptoms and opined that Plaintiff's concentration problems could be a result of illegal drug/medication abuse and the "effect on her ability to work from psychiatric symptoms most likely does not preclude at least simple tasks."
R. at 177. She amended her statement to reflect Plaintiff's ability to concentrate and persist on simple tasks and updated Plaintiff's GAF to 50. R. at 177.

3

Case 6:05-cv-03272-ODS   Document 11   Filed 02/24/06   Page 3 of 9

On January 17, 2003, Plaintiff presented to Kyle P. Smith, D. O., at the Marshfield Family Clinic to establish care after her prior physician moved. R. at 258. Again, Plaintiff reported a prior medical history of right-sided CVA, depression, anxiety, rheumatoid arthritis, chronic bronchitis and Hepatitis C. R. at 258. An examination displayed some tenderness in her right shoulder, hands and wrists. R. at 258. Plaintiff visited Dr. Smith again on February 19, 2004. She complained of lower back and hip pain on the right side after lifting 4x4's. R. at 269. She had tenderness in the lumbosacral region on her right side, but had a negative straight-leg raising test. R. at 269.

An administrative hearing was held on March 22, 2004, in front of Administrative Law Judge L. W. Henry. At the time of the hearing, Plaintiff was still claiming to have had a stroke in 2002. R. at 339. Plaintiff asserted that she was unable to see a specialist for her Hepatitis C, her mental health issues or her rheumatoid arthritis because she had trouble finding someone who accepted Medicaid. R. at 341.

On April 21, 2004, Plaintiff underwent a consultative examination performed by Dr. Stanley Hayes, M.D., a rheumatologist. R. at 275. Plaintiff reported her current medications as Zoloft, Diazepam, Narco, Permarin and Levoxyl. She complained of chronic musculoskeletal pain, primarily in her right hip, persisting for five years. She also reported intermittent pain in her right shoulder and a pain in her neck. R. at 275. Upon examination, Dr. Hayes noted that Plaintiff had generally poor hygiene and grooming. Plaintiff moved independently for all aspects of the examination, but Dr. Hayes assessed her effort level as "poor." R. at 276. He found no lateralizing weakness and her reflexes were intact throughout. R. at 276. Dr. Hayes found no indication of inflammatory arthritis or primary articular disease. He found soft tissue pain consistent with fibromyalgia but felt Plaintiff's limitations were subjective in nature only. R. at 276. Finally, he found chronic depression and a history of hepatitis C. R. at 276.

Dr. Hayes also completed a Medical Source Statement-Physical in which he opined Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally R. at 278. He stated Plaintiff could stand and/or walk about six hours in an eight hour workday. R. at 278. Plaintiff's ability to sit, push and/or pull was not affected by her

impairments. R. at 279. She could climb, balance, kneel and stoop occasionally, but never crouch or crawl. R. at 279. She had an unlimited ability to reach in all directions, handle, finger manipulation and feeling. She had unlimited ability to see, hear and speak. R. at 280. She had a limited ability to handle dust, humidity/wetness, hazards, and fumes, but an unlimited ability to handle temperature extremes, noise and vibration. R. at 281.

Plaintiff underwent a consultative psychological evaluation with Frances Anderson, Psy. D., on June 17, 2004. R. at 283. Plaintiff told Dr. Anderson that she was an alcoholic, but quit drinking in 1996, and only smoked marijuana a couple times as a teenager. R. at 283. She reported memory problems as a result of a 2002 stroke which she said was caused by a birth defect in her neck. R. at 283. Dr. Anderson opined Plaintiff would be able to meet the demands of basic work-related activities on a sustained basis, being able to understand, remember and carry out at least simple instructions, possibly moderately complex instructions. R. at 286. She would be able to make judgments commensurate with the functions of at least unskilled work. She would be able to respond appropriately to supervision, coworkers, and usual work situations. She would be able to adequately deal with changes in a routine work setting. She would also be able to maintain persistence and pace with at least simple tasks, and possibly moderately complex tasks. R. at 286. Finally, Dr. Anderson assessed depressive disorder, at least partially managed by medication, alcohol abuse, cannabis abuse, and a GAF score of 60. R. at 286-87.

Vocational expert Terry Crawford testified that Plaintiff's past relevant work included semiskilled labor, performed at the medium exertion level. R. at 350. She found that an individual the same age, education level and work experience who would have moderate limitations on the abilities to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods would not be able to perform her past work. However, she found that Plaintiff could perform other light unskilled work, including an unskilled sales attendant, where there are 599,000 such jobs in the United States, 21,000 of which are in Missouri. Further, she could be a press operator, where there are 180,000 jobs in the United States, and

5

5,000 in Missouri. R. at 352. When the ALJ added the restriction that the individual must change posture at 30-minute intervals, the vocational expert testified the previously mentioned jobs would not be available. However, the vocational expert found the individual could be a cashier or an office helper. R. at 353.

The ALJ found Plaintiff was not credible regarding the existence, severity, nature and frequency of her subjective complaints and functional limitations. He also found that Plaintiff's daily limitations were a matter of personal choice in lifestyle and not a matter of medical necessity. R. at 20. The ALJ based this finding on the inconsistencies within Plaintiff's own statements. The ALJ found Plaintiff to have a combination of impairments of fibromyalgia and depressive disorder. R. at 21. Because this significantly limits her ability to perform basic work activities, it constitutes a severe impairment based on the requirements of 20 C.F.R. § § 404.1520(c) and 416.920(b). However, he found Plaintiff's other impairments (Hepatitis C, history of TIA without significant residual effects and occasional migraines controlled with medication) do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Further, he found no medically determinable impairment of CVA or rheumatoid arthritis. R. at 21, 23. The ALJ determined Plaintiff retains the capacity for work that exists in significant numbers in the national economy and is not disabled as defined in the Social Security Act.

## DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff claims the ALJ erred in discrediting Plaintiff's subjective complaints of pain. There is little doubt that Plaintiff experiences pain – however, pain, alone, does not justify an award of benefits. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996). The standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

7

739 F.2d at 1322. An ALJ may properly consider a claimant's exaggeration of her symptoms in evaluating his subjective complaints. Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997). Plaintiff claims she is unable to work due to a September 2002 stroke. However, none of her medical records confirm that Plaintiff had a stroke. She also told physicians and the ALJ that she had rheumatoid arthritis. However, there is no medical evidence to support that claim. R. at 159. It appears that Plaintiff consistently exaggerated her physical ailments.

Plaintiff also gave inconsistent statements regarding her alcohol and marijuana use. An ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). Plaintiff told Dr. Smith she had a problem with alcohol, but had not had a drink in ten years. R. at 283. She told Dr. Bender that she did not drink alcohol, but used cannabis twice a month. R. at 180. She told the emergency room physician that she drank "occasionally" and denied using illegal drugs. R. at 159. She then told Dr. Wong she used marijuana, but denied drinking alcohol. R. at 172. Further, according to Dr. Smith's chart notations, Plaintiff frequently requested early refills of Valium. R. at 270. Plaintiff told Dr. Bender that her physician would not renew her prescription for Lorcet because he thought she was a drug addict. R. at 180.

Plaintiff claimed she was unable to crochet, move furniture or do heavy household tasks. She stated she could not clean or cook because of her inability to stand for a long time. However, she also stated she was able to stand for as long as one hour, walk as long as one hour, lift and carry as much as 10 pounds and sit for two hours before needed to get up and walk. R. at 20. She made no complaints about her ability to drive and drove herself to the hearing.

Plaintiff also claims the ALJ failed to properly evaluate her fibromyalgia. The ALJ found that Plaintiff had fibromyalgia, but did not agree the severity of the symptoms amounted to disabled under the SSA. Because ALJ properly discounted Plaintiff's credibility, he also properly accorded her subjective complaints little weight.

8

Case 6:05-cv-03272-ODS   Document 11   Filed 02/24/06   Page 8 of 9

Finally, Plaintiff argues the ALJ failed to fully develop the record. After an initial hearing on March 22, 2004, the ALJ obtained additional examinations in order to obtain a complete medical record. The record contained substantial evidence upon which the ALJ could make a determination that Plaintiff was not disabled

## III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, JUDGE
DATE: February 24, 2006  UNITED STATES DISTRICT COURT